PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE BILLINGS, *estate administrator for decedent* MONTEL A. WILLIAMS, | ) | CASE NO. 4:25-CV-00714 |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| *v.* | ) | |
| CORECIVIC, INC., *et al.*, | ) | **MEMORANDUM OF OPINION AND ORDER** [Resolving ECF No. 16] |
| Defendants. | ) | |

## I. Introduction

In 2023, Plaintiff's son suffered a fatal fentanyl overdose while incarcerated at a private prison in Ohio. She sued the prison's operator, warden, and staff on his behalf for subjecting him to cruel and unusual punishment under the Eighth Amendment and wrongful death under state law. Defendants removed the case to federal court and moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). To survive dismissal on the constitutional claim, Plaintiff's First Amended Complaint "must contain enough factual content to permit a reasonable inference that [Defendants are] liable for the alleged constitutional tort." *Caraway v. CoreCivic of Tennessee, LLC*, 98 F.4th 679, 683 (6th Cir. 2024) (citation modified). Because it contains little more than "a formulaic recitation of a cause of action's elements[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Motion to Dismiss (ECF No. 16) is granted in part.

## II. Background

### A. History

In 2022, Montel Williams ("Decedent") pled guilty to felonious assault in the Stark County (Ohio) Court of Common Pleas and was sentenced to four-and-a-half years in state prison. *See* *State v. Williams*, No. 2022-CR-1190B (Ohio C.P. Jun. 14, 2022). He was first incarcerated at the Lorain Correctional Institution then transferred to the Northeast Ohio Correctional Center ("NEOCC"). *See* *id.* NEOCC is a private prison in Youngstown, Ohio operated by CoreCivic, Inc.—*née* Corrections Corporation of America, one of the nation's largest private prison contractors—under an agreement with the Ohio Department of Rehabilitation and Correction ("ODRC"). *See* Jocelyn Rosnick, *Ohio's Problematic Private Prisons: A Primer*, ACLU of Ohio (Nov. 20, 2024), https://www.acluohio.org/news/ohios-problematic-private-prisons-primer. At the time, Douglas Fender was NEOCC's warden.[1] ECF No. 9–1 at PageID #: 66, ¶ 5.

On Halloween 2023, Decedent "intentionally or accidentally ingested fentanyl, or some other dangerous drug" at NEOCC, overdosed, and died. ECF No. 9–1 at PageID #: 67, ¶ 8. His mother, Bonnie Billings ("Plaintiff"), became the administrator of his estate. ECF No. 9–1 at PageID #: 66, ¶ 3. According to her, CoreCivic has a "policy and practice" of deliberately understaffing its prisons "to minimize operational costs and maximize corporate profits." ECF No. 9–1 at PageID #: 67, ¶ 12 (citation modified). She claims the practice has had a "negative

[1] Kenneth Hoover is NEOCC's warden today. *See* *Northeast Ohio Correctional Center*, CoreCivic, https://www.corecivic.com/facilities/northeast-ohio-correctional-center (last visited Aug. 13, 2026).

impact" on "security, emergency response, and contraband control" at various out-of-state CoreCivic institutions. ECF No. 9–1 at PageID #: 68, ¶ 13. And, "on information and belief," she says CoreCivic operated NEOCC "under similar [understaffed] conditions." ECF No. 9–1 at PageID #: 68, ¶ 14 (citation modified). She also claims there is a display at NEOCC (the "Wall of Shame") featuring photographs and descriptions of ex-employees caught and fired for smuggling contraband into the prison. ECF No. 9–1 at PageID #: 68, ¶ 15.

### B. Proceedings

Plaintiff sued CoreCivic, Warden Douglas Fender, and five John/Jane Does ("Defendants") on Decedent's behalf[2] in the Mahoning County (Ohio) Court of Common Pleas in April 2025. ECF No. 1–1 at PageID #: 7. Defendants immediately removed the case to the Northern District of Ohio on federal question jurisdiction under 28 U.S.C. § 1331 and moved to dismiss under Rule 12(b)(6). ECF Nos. 1 at PageID #: 1; 8. Plaintiff filed a Motion for Leave to File an Amended Complaint *Instanter* while the Motion to Dismiss was pending. ECF No. 9. The Court granted the former and denied the latter as moot. ECF No. 15.

The First Amended Complaint—now operative—contains two causes of action. ECF No. 9–1. *Claim I* is a wrongful death claim under Ohio law against CoreCivic and Warden Fender. ECF No. 9–1 at PageID ##: 69–70, ¶¶ 18–23. *Claim II* is a failure-to-protect claim under 42 U.S.C. § 1983 against CoreCivic, Warden Fender, and John/Jane Does. ECF No. 9–1 at PageID ##: 70–71, ¶¶ 24–29. The Court has federal question jurisdiction over the constitutional claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367. On *Claim I*, Plaintiff seeks compensatory damages for loss of

[2] Used colloquially, as an Ohio wrongful death action run to the decedent's beneficiaries, not the estate. *See* *Taylor v. Ernst & Young, L.L.P.*, 958 N.E.2d 1203, 1217 (Ohio 2011).

life, pain and suffering, medical expenses, burial expenses, loss of potential earnings, and loss of companionship. ECF No. 9–1 at PageID #: 70, ¶ 22. She also seeks punitive damages "to punish the Defendants for their gross negligence and to deter similar conduct in the future." ECF No. 9–1 at PageID #: 70, ¶ 23. On *Claim II*, she wants compensatory damages, punitive damages, costs, and fees. ECF No. 9–1 at PageID #: 71, ¶ 28. In October 2025, Defendants moved again to dismiss for failure to state a claim under Rule 12(b)(6). The motion is fully briefed and resolved herein. ECF Nos. 16, 17, 18.

## III. Law

Civil cases begin with complaints. *See* Fed. R. Civ. P. 3. Complaints must clearly and concisely explain why the plaintiff deserves relief. *See* Fed. R. Civ. P. 8(a)(2). The standard is plausibility, which demands more than possibility but less than probability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). Plausibility requires specific facts linking the defendant to the allegedly unlawful conduct. *See id.* Conclusions, speculations, and "naked assertions" are not specific facts. *Id.* (quoting *Twombly*, 550 U.S. at 555).

In response to an anemic pleading, a defendant can move to dismiss for failure to state a claim under Rule 12(b)(6). Once briefed, district courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Washington v. First Nat'l Bank of Pennsylvania*, 179 F.4th 1008, 1011 (6th Cir. 2026) (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)). They then determine whether the complaint "raise[s] a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555).

A few caveats are relevant. First, only "well-pleaded" allegations are presumed true. *Iqbal*, 556 U.S. at 679. Courts ignore legal conclusions disguised as factual allegations. *See* *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555). Second, courts are generally limited to reviewing the "four corners" of the complaint. *Blackwell v. Nocerini*, 123 F.4th 479, 486 (6th Cir. 2024). But they can consider some exhibits, public records, and pleading attachments. *See* *Hodges v. City of Grand Rapids*, 139 F.4th 495, 510 (6th Cir. 2025). And third, because resolving a motion to dismiss is more art than science, it requires equal parts common sense and judicial experience. *See* *Iqbal*, 556 U.S. at 679. Thus "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

## IV. Discussion

### A. Claim II [3]

Plaintiff alleges under 42 U.S.C. § 1983 that "Defendants, acting under color of state law, failed in their duty to protect [Decedent] from a known and foreseeable risk of serious harm" of drug overdose at NEOCC. ECF No. 9–1 at PageID ##: 70–71, ¶ 26. A 42 U.S.C. § 1983 claim is a congressionally created cause of action that lets people sue state actors who violate their constitutional rights. That is, it creates a "species of tort liability" for constitutional violations. *Manuel v. City of Joliet, Illinois*, 580 U.S. 357, 362 (2017). To succeed on a 42 U.S.C. § 1983 claim, Plaintiff must first identify a constitutional right and then

[3] Because supplemental jurisdiction over *Claim I* relies on federal question jurisdiction over *Claim II*, the Court addressees them non-sequentially.

show that a person acting under color of state law deprived that right.[4] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Here, she points to the Eighth Amendment, which prohibits the states from subjecting prisoners to "cruel and unusual punishments." U.S. Const. amend. VIII. It applies to prisoners in post-conviction detention, like Decedent. *See Lovell v. Cty. of Kalamazoo, Michigan*, 172 F.4th 931, 936 (6th Cir. 2026) (citing *Whitley v. Albers*, 475 U.S. 312, 318 (1986)).

The Sixth Circuit calls causes of action like *Claim II* "failure-to-protect" claims. *Caraway*, 98 F.4th at 683. Failure-to-protect claims have two parts: one objective and one subjective. *See id.* The objective component requires Plaintiff to show that Decedent faced "an objectively excessive risk of harm" at NEOCC. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The subjective component requires her to "alleg[e] facts permitting the reasonable inference that [Defendants] (1) had notice of the risk that inmates would overdose based on their unfettered access to drugs and (2) failed to reasonably respond to that risk." *Id.* at 686 (citing *Zakora v. Chrisman*, 44 F.4th 452, 472 (6th Cir. 2022) and *Farmer*, 511 U.S. at 844).

"A plaintiff raising a failure-to-protect claim premised on a [prison] drug overdose faces an uphill battle" because "simple exposure to drugs doesn't suffice." *Cole v. Ashtabula Cty., Ohio*, No. 26-3007, 2026 WL 1847748, at *4 (6th Cir. June 26, 2026) (quoting *Zakora*, 44 F.4th at 472). Instead, she must show "that there was *unfettered access* to deadly drugs in the jail." *Id.* (quoting *Caraway*, 98 F.4th at 684) (emphasis added). Plaintiff can make that showing by plausibly alleging there was "a widespread presence of drugs at the facility, there

[4] It is uncontested that "when the state grants a private actor [like NEOCC] legal authority to exercise control over inmates," the private prison acts under color of state law. *Nugent v. Spectrum Juv. J. Services*, 72 F.4th 135, 142 (6th Cir. 2023).

were recent prior overdoses, and [that] jail officials failed to investigate the overdoses." *Id.* (quoting *Caraway*, 98 F.4th at 684). Even when taking its "well-pleaded" allegations as true, the First Amended Complaint fails: it does not plausibly allege that Decedent faced unfettered drug access at NEOCC.

Precedent resolves this motion cleanly. In *Zakora v. Chrisman*, the Sixth Circuit held that a prison overdose claim survived dismissal (in part) due to three extant and "extraordinary" factors. *Caraway*, 98 F.4th at 684 (citing 44 F.4th 452, 470 (6th Cir. 2022)). First, "the complaint contained detailed allegations about the widespread presence of drugs at [the prison]." *Id.* (quoting *Zakora*, 44 F.4th at 470). Second, it alleged that "in the two days before [the inmate]'s overdose, two other inmates in his twelve-to-sixteen-inmate unit had also overdosed." *Id.* (citing *Zakora*, 44 F.4th at 461, 471). And third, it alleged that "prison officials failed to investigate those [recent] overdoses." *Id.* (citing *Zakora*, 44 F.4th at 461–62, 472). Two years later in *Caraway v. CoreCivic*, the Sixth Circuit cabined *Zakora* and affirmed dismissal of a failure-to-protect overdose claim that "fail[ed] to allege that [the inmate] faced an excessive risk of harm from unfettered access to drugs" because "[o]nly one of the three key allegations in *Zakora* [was] arguably present." 98 F.4th 679, 685 (6th Cir. 2024). And two years after *Caraway*, *Cole v. Ashtabula* reinforced—albeit in an unpublished opinion—that *Zakora*'s complaint survived dismissal due to extraordinary circumstances rarely found in prison overdose cases. *See* No. 26-3007, 2026 WL 1847748, at *4 (6th Cir. June 26, 2026) ("one instance of drugs slipping into the jail isn't enough to establish a widespread presence of drugs, which is the key question") (citation modified).

Here, the First Amended Complaint is more like *Caraway* and *Cole* than it is *Zakora*. A failure-to-protect claim requires plausible factual allegations of "unfettered access to drugs,"

which Plaintiff pleads only by speculation and attenuation. To be sure, "the risk of injury from unfettered access to deadly drugs inside a prison is not one that today's society chooses to tolerate." *Zakora*, 44 F.4th at 470 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). But the mere presence of fentanyl in a prison, without more, does not offend contemporary standards of decency enough to constitute cruel and unusual punishment under the Eighth Amendment. *See id.* at 472. Plaintiff does not provide any detail as to how widely present drugs were at NEOCC, whether and when other inmates overdosed there, or whether NEOCC learned of prior overdoses (fatal or otherwise) but failed to investigate them. Nor does she explain how an alleged scheme of understaffing at CoreCivic facilities in Tennessee—even if transposed to NEOCC by inference—brought fentanyl to Decedent's doorstep (that is, how drugs entered the prison, who carried them there, and what CoreCivic could or should have done to prevent the influx of drugs and Decedent's death).[5]

It is also unclear how Decedent consumed the fentanyl that killed him. The First Amended Complaint says only that he "intentionally or accidentally ingested fentanyl, or some other dangerous drug" on October 31, 2023. ECF No. 9–1 at PageID ##: 67–68, ¶ 8. Without question, "an inmate who suffers a drug overdose will not automatically lose a failure-to-protect claim simply because he voluntarily ingested the drugs." *Zakora*, 44 F.4th at 471. But the naked proposition that Defendants did "something" that "directly resulted in [Decedent]'s exposure to and ingestion of fentanyl" is a legal conclusion without factual or causal support.

[5] Another court in this circuit dismissed an analogous complaint. *See Williams v. CoreCivic of Tennessee, LLC*, No. 1:24-CV-01074, 2025 WL 952241, at *7 (W.D. Tenn. Mar. 28, 2025). The Sixth Circuit affirmed, holding that "the allegations in Plaintiff's complaint going to the causal relationship between the understaffing and the proliferation of drugs are too generalized and conclusory to sustain a plausible claim." *Williams v. CoreCivic of Tennessee, LLC*, No. 25-5377, 2026 WL 323971, at *4 (6th Cir. Feb. 6, 2026)

ECF No. 9–1 at PageID #: 71. And Plaintiff's allegation that "Warden Douglas Fender, following the incident, made statements to the effect that he was not surprised by the drug-related death within the facility" is unavailing: first, the statement came *after* Decedent died, not before; and second, general acknowledgment that overdoses happen in prisons is not an admission that drugs moved freely through NEOCC. ECF No. 9–1 at PageID #: 67, ¶ 11.

Nor does the "Wall of Shame" bridge the gaps in Plaintiff's pleading. Although the Court must "draw all reasonable inferences" in her favor, it is not reasonable to reflexively infer that the display indicates obvious and unconstitutional tolerance of staff-facilitated drug smuggling. *Washington*, 179 F.4th at 1011. Its existence is equally consistent with effective drug interdiction—that is, with NEOCC's practice of identifying, exposing, and disciplining staff members who smuggled contraband into the prison. *See Cole*, 2026 WL 1847748, at *5 ("an officer's deposition testimony that a lot of drugs were found [on prisoners] . . . undermines [the plaintiff]'s claim because it demonstrates that jail officials often caught drugs before they entered the facility. And that suggests drugs weren't widespread at the [jail]"). Even if the Court adopted Plaintiff's take on the "Wall of Shame" (it does not), alleging the mere knowledge of contraband smuggling is not the same as plausibly alleging unfettered access to lethal narcotics.

Plaintiff's allegations concerning audits by the Tennessee Comptroller of the Treasury do nothing to alter or convert this analysis. The Court is limited to reviewing the "four corners" of the First Amended Complaint, *Blackwell*, 123 F.4th at 486, and Plaintiff does not ask it to examine the audits themselves. ECF No. 9–1 at PageID ##: 67–68, ¶¶ 13–14. And because they are neither attached nor central to Plaintiff's claims, the Court has no reason to review them. *See Hodges*, 139 F.4th at 506 ("We may not consider materials outside the

complaint except in narrow circumstances, and, as we shall explain, none apply here"). Plaintiff simply alleges that they "document persistent staffing shortages and their direct relationship to inmate safety concerns" and found that "CoreCivic facilities [in Tennessee] operated with substantial vacancy rates among correctional officers[.]" ECF No. 9–1 at PageID #: 68, ¶ 13.

But these allegations, taken as true, do nothing to push *Claim II* towards plausibility. Understaffing at prisons in Tennessee does not plausibly allege unfettered access to drugs at NEOCC. The First Amended Complaint supplies no NEOCC staffing figures, no ODRC findings, and no NEOCC-specific facts about search or screening practices. Plaintiff's attempt to connect the Tennessee audits to NEOCC by claiming that "[o]n information and belief, CoreCivic operated the Youngstown facility under similar conditions," is a contention with no factual basis, and a "belief" unsupported by facts is not a well-pleaded allegation. ECF No. 9–1 at PageID #: 68, ¶ 14; *see* *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (noting that allegations based "upon information and belief . . . are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency").

The Sixth Circuit has provided clear guidance for navigating the nuances of failure-to-protect inmate overdose claims: some are "extraordinary" due to the "egregiousness" of the defendant's misconduct; others, for better or worse, are "run-of-the-mill drug-overdose cases" that inevitably fail at pleading. *Caraway*, 98 F.4th at 684. *Claim II* is clearly the latter.[6]

[6] Because *Claim II* does not plausibly allege a constitutional violation, the Court need not address the propriety of raising it against CoreCivic under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) or Warden Fender in his individual or official capacities. *See, e.g.*, *Tidwell v. Tennessee Dep't of Correction*, No. 1:24-CV-01118, 2025 WL

**B. Claim I**

Plaintiff alleges that "Defendants, CoreCivic and Douglas Fender, in his official capacity as Warden, through their actions and inactions, directly caused the wrongful death of [Decedent], in violation of the applicable state wrongful death norms." ECF No. 9–1 at PageID #: 69, ¶ 18. In Ohio, wrongful death claims are purely statutory and did not exist at common law. *See* *Ward v. Highland Cty. Sheriff's Off.*, No. 1:20-CV-947, 2026 WL 878707, at *4 (S.D. Ohio Mar. 31, 2026) (citing *Mercer v. Keane*, 172 N.E.3d 1101, 1108 (Ohio App. 5th Dist. 2021)). They are governed by Ohio Rev. Code §§ 2125.01 and 2125.02 and require showing three elements: "(1) the existence of a duty owed to the plaintiff's decedent; (2) a breach of that duty; and (3) proximate causation linking the breach of the duty to the decedent's death." *Id.*

Because it is a state-law claim, however, the Court's exercise of supplemental jurisdiction over *Claim I* turns on Plaintiff's constitutional allegations in *Claim II*. *See* *Hehrer v. Cty. of Clinton, Michigan*, 161 F.4th 955, 968 (6th Cir. 2025) ("our caselaw requires district courts to presume that they should decline [supplemental] jurisdiction if they have rejected all the federal claims before trial"). In this case, Plaintiff "points to nothing that would overcome this starting presumption." *Id.* Nor is there any indication that "values of judicial economy, convenience, fairness, and comity" would be served by the Court's resolution of what is apparently an unsettled question of Ohio law: whether a private prison operator owes inmates a duty to protect them from the consumption of illegal narcotics. *Hester v. Chester Cty., Tennessee*, 162 F.4th 780, 790 (6th Cir. 2025) (quoting *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010)). Here, remand is the wiser route. *See* *Carnegie-Mellon Univ. v.*

---

2678790, at *6 (W.D. Tenn. Sept. 18, 2025) ("because the complaint doesn't allege an underlying constitutional violation, those [analogous] claims fail").

*Cohill*, 484 U.S. 343, 351 (1988) ("when a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court").

### C. Additional Issues

Four other points are worth addressing. *First*, Plaintiff claims that "Defendants ask the Court to dismiss a complaint that the Court has already examined for amendment purposes and found sufficient on its face." ECF No. 17 at PageID #: 175. Not so. When the Court gave Plaintiff permission to amend her pleading, it found the proposed pleading (*i.e.*, the First Amended Complaint) facially sufficient for amendment purposes only, not facially sufficient to defeat a Rule 12(b)(6) motion to dismiss.

*Second*, Plaintiff says that "[i]f the Court identifies any pleading defect, Rule 15(a)(2) and the Court's prior Order favros leave to amend rather than dismissal, especially where simple clarifications—not new theories—address the concern." ECF No. 17 at PageID #: 184. But an amendment request buried in an opposition brief is not a proper motion under Rule 15(a)(2). *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004). And the Court is neither co-counsel for Plaintiff nor required to expend time and effort to help plug gaps in a deficient pleading until it eventually passes Rule 8(a)(2) muster. Such a statement is not well taken when—as here—it has been more than a year since Plaintiff initiated this litigation. Although technically still at the pleading stage, the case is hardly at the threshold where liberal amendment is tolerated. Furthermore, Plaintiff previously faced a motion to dismiss from Defendants (ECF No. 8, rendered moot by ECF No. 15) that argued nearly identical grounds for dismissal as those addressed herein, giving her advance notice of Defendants' arguments and her pleading's potential vulnerabilities.

*Third*, the First Amended Complaint is internally inconsistent as to the capacity in which it implicates Warden Fender. In the preamble, it says he is sued "in his official capacity as Warden[.]" ECF No. 9–1 at PageID #: 65. But on the next page, it says he is "sued in his official capacity . . . [and] sued individually as well." ECF No. 9–1 at PageID #: 66, ¶ 5. Then, in *Claim I*, it again says he is sued only "in his official capacity as Warden." ECF No. 9–1 at PageID #: 69, ¶ 18 (citation modified). And *Claim II* vaguely implicates "Defendants, acting under color of state law"—not naming Warden Fender in any capacity or any other Defendants at all. ECF No. 9–1 at PageID #: 70, ¶ 26. This imprecision is a form of "shotgun pleading" proscribed by the Federal and Local Rules of Civil Procedure because it "inhibits serious judicial consideration of the claims" and "delay[s] the judicial process." Committee Note, Local Rule 3.16; *see* Fed. R. Civ. P. 8, 10. It is not the Court's responsibility to strain to determine (a) who Plaintiff is suing and (b) for what causes of action.

*Finally,* along with CoreCivic and Warden Fender, Plaintiff's original complaint caption lists "John, Jane, and Entity Does 1–5" as Defendants. ECF No. 1–1 at PageID #: 7. And her First Amended Complaint's preamble says the lawsuit is brought "against CoreCivic, Douglas Fender, in his official capacity . . . and the further parties above[.]" But the amended caption omits the Does entirely, listing only "Core Civic [sic], Inc. et al." Later, Plaintiff says "[t]he Does above are individual or corporate persons whose names are not known, but may be revealed during discovery." ECF No. 9–1 at PageID #: 66, ¶ 6. But unknown-party designations (*e.g.*, "Doe," "Smith," "Anonymous") cannot serve as perpetual placeholders reserving and tolling claims for defendants to be identified down the line. *See* *Zakora*, 44 F.4th at 481 (citing *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (noting that replacing John Does for named parties is adding new parties to a lawsuit, not the "mere substitution" of extant

ones)). Were it otherwise, civil plaintiffs could name any number of Does, wade through discovery, then plug-and-play defendants for additional liability. When Plaintiff filed her First Amended Complaint in June 2025, she had more than four months remaining on the statute of limitations for *Claim II*.[7] ECF No. 9–1. During that time—not to mention the thirty-three months since Decedent's death and the sixteen months since she first sued in state court—she has neither named the Doe Defendants nor moved for expedited discovery to learn their identities and effectuate service of process.

## V. Conclusion

Defendants' Motion to Dismiss (ECF No. 16) for failure to state a claim under Rule 12(b)(6) is granted in part: *Claim I* is remanded to the Mahoning County Court of Common Pleas; *Claim II* is dismissed with prejudice. A separate entry of judgment shall issue.

IT IS SO ORDERED.

August 20, 2026
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge

[7] Because 42 U.S.C. § 1983 does not specify a statute of limitations, 42 U.S.C. § 1988 tells federal courts to borrow from the personal injury statute in the state where the claim is filed. *See Pryor v. Ohio State Univ.*, 139 F.4th 536, 539 (6th Cir. 2025) (citing *Owens v. Okure*, 488 U.S. 235, 243–44 (1989)). Here, that means Ohio Rev. Code § 2305.10, which requires the claim "be brought within two years after the cause of action accrues." Therefore, *Claim II* accrued on October 31, 2023 (the day Decedent died) and expired two years later under Ohio Rev. Code § 2305.10 (*i.e.*, October 31, 2025).